IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Bolus,                                    :
                          Appellant              :
                                                 :    No. 202 C.D. 2018
                  v.                             :
                                                 :    Submitted:  December 11, 2018
City of Scranton Department of                   :
Licensing, Inspections and Permits;              :
and City of Scranton Housing                     :
Appeals Review Board                             :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                        FILED:  May 2, 2019


           Robert Bolus appeals from the January 11, 2018 opinion and order of the
Court of Common Pleas of Lackawanna County (trial court) dismissing Bolus's
appeal from the City of Scranton Housing Appeals Review Board (Board), which
upheld a notice of violation issued to Bolus by the City of Scranton Department of
Licensing, Inspections, and Permits (Department).


                      **Facts and Procedural History**

           By way of background, this matter began in January 2011 when the
Department issued Bolus a violation notice for illegally parked commercial/junk
trailers being used for storage on his property located at 1527 Birch Street, Scranton,

Pennsylvania (the Property) in an R1-A zone. Several months later, the Department issued a second notice regarding the vehicles. Bolus filed an appeal with the zoning hearing board (ZHB) and, after a public hearing was conducted, the ZHB voted unanimously to deny Bolus's appeal. Bolus filed an appeal with the trial court, but it was dismissed for failure to file a brief in support of the appeal. (Board's Findings of Fact (F.F.) Nos. 1-8.)

In September 2014, the Department issued another notice of violation regarding the illegally parked junk/commercial trailers on the Property, which had allegedly remained on the Property since 2011. The following month, 24 citations for junk vehicles were filed against Bolus in the magisterial district court. The court held a hearing at which both sides presented argument. The court directed Bolus to remove the vehicles from the Property within two months. As a result of his failure to comply with the court order, Bolus was found guilty of the citations. Bolus appealed the summary criminal convictions to the trial court but his appeal was dismissed for failure to comply with the Pennsylvania Rules of Criminal Procedure. The trial court additionally ordered Bolus to remove the storage containers/trailers from the Property by February 29, 2016. (Board's F.F. Nos. 9-15.)

In October 2016, Patrick Hinton, Director of the Department, issued Bolus a notice of violation (the Notice) for the Property alleging violations of the Pennsylvania Uniform Construction Code (UCC), the regulations promulgated under the Pennsylvania Construction Code Act;[1] the International Property Maintenance Code (IPMC); and FOC #155 of 1999.[2] The Notice stated, in pertinent part,

---

[1] In 1999, the General Assembly enacted the Pennsylvania Construction Code Act, Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§7210.101-7210.1103, to insure uniform, modern construction standards and regulations throughout the Commonwealth. Section 102 of the Act, 35 P.S. §7210.102. The Construction Code Act applies generally to the construction, alteration, **(Footnote continued on next page…)**

This office has again received several complaints regarding the [Property]. An inspection was conducted [and] violations were noted. The [] [P]roperty has been vacant for several years and little to no progress had been made to finish construction. As you are aware[,] the trailers/storage on your [P]roperty have been an on-going issue since around 2011.

The last we spoke regarding the newly placed containers on your [P]roperty was March of [2016]. You assert that the new containers are there to store equipment and personal belongings during construction. The last time a building permit was issue[d] was August 2015. The contractor was Robert Kleha Jr. and the building permit number was (15080118).

It is my understanding that Mr. Kleha is no longer involved with said [P]roperty and the construction thereof. Further there has been no active construction on said [P]roperty for

---

**(continued…)**

repair, and occupancy of all buildings in the Commonwealth and preempts the establishment of different construction standards by local ordinance. 35 P.S. §7210.104(a), (d). Section 301(a)(1) of the Act, 35 P.S. §7210.301(a)(1), directed the Department of Labor and Industry to adopt, by regulation, "the 1999 BOCA National Building Code, Fourteenth Edition, as a Uniform Construction Code." In establishing the UCC, the Department of Labor and Industry adopted and incorporated by reference various model codes. *See* Section 104 of the UCC, 34 Pa. Code §403.21.

[2] This appears to be a reference to File of Council (FOC) #155, 1999, a Scranton ordinance entitled, "Providing for the Licensing and Regulating of Contractors Doing Business in the City of Scranton Including Requirements for the Granting of Permits and Fees for Same; Providing Penalties and Rights of Appeal," adopted by the City Council of Scranton on December 13, 1999. Although FOC #155, 1999 was not submitted into the record, Scranton's governing codes can be found online at the City of Scranton's official website: http://www.scrantonpa.gov/lips.html (last visited April __, 2019). It appears that FOC #155, 1999 was amended in its entirety by FOC #63, 2016 on December 15, 2016. *See* Scranton Governing Code, Chapter 203: Contractors, *available at* https://ecode360.com/12077842 (last visited April __, 2019); Scranton City Council Meeting Minutes (Dec. 15, 2016), http://www.scrantonpa.gov/council_agendas/2016/12-15-2016%20Minutes.pdf.

3

at least 12 months. As such, the above building permit has since expired and is no longer valid. The commercial containers on said [P]roperty may pose a health and safety risk to the public. They are causing a blighting influence and are unsightly in a residential zone.

*You are in violation of the Uniform Construction Code (UCC), the International Property Maintenance Code & FOC 155 of 1999. The violations and specifications are attached.*

Storage containers are temporary structures and the purpose of such containers are [sic] temporary in nature. Your purpose was to temporarily store equipment and personal items until construction was completed. However, said construction was abandoned nearly 12 months ago. Therefore, I hereby order any and all temporary storage containers on said property to be removed within five (5) days upon receipt of this letter. Failure to comply with this order will result in legal action. . . .

Be advised, your [P]roperty is liable to be condemned as a vacant structure due to the lack of effort to finish construction and the fact that the structure has been vacant and uninhabitable for over 5 years.

(Reproduced Record (R.R.) at 31a) (emphasis added). The Notice indicated that Bolus violated section PM-302.1 of the IPMC, which provides,

All exterior property and premises shall be maintained in a clean, safe and sanitary condition. The occupant shall keep that part of the exterior property which such occupant occupies or controls in clean and sanitary condition.

(R.R. at 32a.) Additionally, the Notice indicated that Bolus violated sections 403.63(g) and 403.84(a) of the UCC relating to construction.[3] Finally, the Notice

---

[3] Section 403.63(g) of the UCC provides,

A permit becomes invalid unless the authorized construction work begins within 180 days after the permit's issuance or if the authorized

**(Footnote continued on next page…)**

4

indicated that the Property was in violation of FOC #155 of 1999, "[p]roviding for the licensing and regulating of contractors doing business in the City of Scranton including requirements for the granting of permits and fees for the same; providing penalties and rights of appeal." (R.R. at 32a.)

Bolus appealed to the Board, which held a hearing on February 27, 2017, at which Bolus appeared and testified. In his testimony, Bolus raised two issues. In his first issue, Bolus argued that the Property was not "vacant" as characterized by the Notice. Bolus explained that he had hired a contractor to do work on his home located on the Property; however, the contractor damaged the Property, which resulted in Bolus bringing suit against the contractor. Bolus stated that the contractor's insurance company informed him that he could not remediate the alleged issues with the work until the claims were resolved. According to Bolus, this resulted in "kind of a stalemate," as construction remained incomplete and Bolus's

---

**(continued…)**

> construction work permit is suspended or abandoned for 180 days after the work has commenced. A permit holder may submit a written request for an extension of time to commence construction for just cause. The building code official may grant extensions of time to commence construction in writing. A permit may be valid for no more than 5 years from its issue date.

34 Pa. Code §403.63(g). Section 403.84(a) provides,

> A building code official may determine that a building, structure or equipment is unsafe because of inadequate means of egress, inadequate light and ventilation, fire hazard, other dangers to human life or the public welfare, illegal or improper occupancy or inadequate maintenance. A vacant building or structure that is not secured against entry is unsafe under this section.

34 Pa. Code §403.84(a).

5

personal property and equipment were being stored in the containers on the Property. (R.R. at 39a.) Bolus testified that the home was nonetheless habitable as there was still electrical power, state of the art heating, and running water in it. Bolus indicated that he stays at the Property when he "feel[s] like it," R.R. at 42a, as he frequently travels; however, he stated that he has people watch the house for him when he is away. (F.F. Nos. 17-18; R.R. at 39a-52a.)

In his second issue, Bolus focused on the difference between a trailer and a storage container and contended that the items on his Property were storage "containers" permissible under the Scranton Zoning Code because they were not trailers, commercial vehicles, or structures. (R.R. at 34a.) Bolus further asserted that the issue of the containers was barred by res judicata because the issue had already been litigated.[4] Bolus explained that when the magisterial district judge directed him to remove the trailers, he complied with the order, but replaced the trailers with seed containers, identical to ones located throughout the city.[5] He also indicated that he presently had four containers on the Property with his personal belongings in them. Bolus maintained that these containers could not be classified as trailers because they

---

[4] Curiously, although Bolus argued that the issue of the containers was already decided, he also contended that, after his appeal from the magisterial district court's order finding him guilty of the 24 citations, the trial court was supposed to hold a hearing to settle the definition of a trailer and to determine whether the containers on the Property fit that definition. However, Bolus asserted that the hearing never occurred and, thus, the issue of what constitutes a trailer remained unsettled. Although it is not clear from the record, presumably, the hearing did not occur because the trial court dismissed Bolus's appeal for failure to comply with the Pennsylvania Rules of Criminal Procedure. *See* Board's F.F. No. 15.

[5] Maintaining that he is a professional in the trucking business, Bolus also explained that once the undercarriage of a trailer, including the axles and wheels, is removed, the trailer becomes a "container," as it can no longer be pulled by a trailer and, instead, must be placed on top of something such as a flatbed trailer to be hauled. (R.R. at 83a-84a.) Bolus also asserted that a trailer must be registered, whereas a container does not because it is not a vehicle.

are unable to be hooked up and driven away like tractor-trailers and, instead, must be picked up and put on a trailer in order to be hauled, similar to Pods Containers or seed containers. Bolus further argued that the containers could not be classified as "structures" which are built by, for example, pouring a concrete floor. Bolus emphasized that his containers were portable and not habitable and also noted that they were located in a secluded area in the woods on the Property, which sits 550 feet from the main roadway and, thus, could not present a danger to the public because the public does not have access to his Property. (Board's F.F. Nos. 19, 21, 23, 28; R.R. at 34a, 51a-62a, 72a-77a, 80a.)

Director Hinton testified at the hearing and stated that, from the time he took his position as Director in January 2014, he was "inundated" with complaints about the Property. (R.R. at 59a.) Director Hinton also testified that he had the opportunity to look inside the original junk/commercial vehicles on the Property and observed "very little personal items" in them. (R.R. at 67a.) He stated his belief that "one [P]od container would totally suffice for the personal items" or that, alternatively, the items "could probably fit in the basement or parts of the house." *Id.* As such, Director Hinton stated, "[I]t's my opinion that really the trailers aren't needed . . . ." *Id.* (Board's F.F. No. 22.)

With regard to the present matter, Director Hinton noted that Bolus had a valid building permit for the construction on his house but, around March 2016, Bolus notified the Director about the insurance issue that had prevented him from proceeding with building for a couple of years. Director Hinton testified that he was also in contact with Bolus's former contractor, who stated he was walking away from the project. Noting that the last building permit was issued in August 2015 specifically for the former contractor, and that there had been no active construction

7

on the Property during the prior 12 months, Director Hinton determined that the building permit was invalid. (R.R. at 69a-71a.)

After receiving further complaints about the trailers/containers, Director Hinton issued the Notice, which did not assert zoning violations but instead listed violations under the UCC because, in his estimation, the trailers/containers were structures that were not in "good order, clean, and sanitary condition." (R.R. at 71a.) At the hearing, Director Hinton emphasized that, pursuant to section 403.84 of the UCC, a building code official, such as himself, was permitted to make a determination as to whether a structure is unsafe and urged the Board to uphold his determination. Finally, Director Hinton noted that, under the Scranton Zoning Code even temporary structures, such as Pods or the structures on Bolus's Property, were subject to regulation and the length of time that they are permitted to sit on a property is to be determined by the ZHB.[6] (R.R. at 70a-71a, 77a-79a.)

Finally, Mary Dunleavy, a Scranton resident, testified at the hearing as a representative of the East Mountain Residents Association. She stated that the containers had been on the Property, which is in a residential zone, for the past seven years. She explained that residents are not bothered by similar containers elsewhere in the city because those containers were not in their residential zone, which they "work very hard to maintain." (Board's F.F. at No. 29; R.R. at 86a.)

At the conclusion of the hearing, the Board voted unanimously to uphold the violations and subsequently issued its findings of fact and conclusions of law. In its findings, the Board determined that, while the issue of whether the items

---

[6] With regard to this point, Director Hinton cited section 807(C) of the Zoning Code, which indicated that a temporary permit may be issued by the ZHB as a special exception for temporary structures or uses not otherwise permitted, subject to several conditions. (Supplemental Record (S.R.) at 8-12.)

8

on the Property were temporary structures was not barred and was ripe for consideration, Bolus's arguments on the matter were not compelling. The Board specifically found that the "containers" on Bolus's property were temporary structures, subject to regulation by the UCC. Additionally, the Board agreed with Director Hinton and found that the temporary structures constituted an "unsafe condition within the neighborhood" and that the Property was not in a clean, sanitary, or good orderly condition. (Board's F.F. No. 27.) Accordingly, the Board upheld the Notice and concluded that Bolus was in violation of the provisions referenced therein. (Board's F.F. Nos. 20-21, 25, 27, 39-40.)

Bolus appealed to the trial court, which held a hearing in September 2017, at which both sides presented only legal argument. On January 11, 2018, the court issued a memorandum and order upholding the citations. In its opinion, the trial court explained that it did not need to make a determination on the definition of a trailer versus a storage container, as the relevant question before it was whether the containers on Bolus's property violated the pertinent sections of the UCC by presenting an unsafe, unsanitary, or unclean condition for the public, or because they lacked the appropriate permitting. (Trial court op. at 5.)

As a threshold matter, the court observed that it appeared undisputed that the four containers on the Property were being used to store various items while the house was under construction. The court noted Director Hinton's testimony that construction had been stalled for over 12 months due to the dispute between Bolus and his former contractor. The court found this testimony was supported by photographs in the record depicting partially completed exterior construction on the house, including images showing an exterior staircase detached from the rest of the home, and "large, jagged lumber boards laying around." *Id.*

9

Further, the court highlighted Bolus's testimony that the dispute between himself and his former contractor resulted in a "kind of a stalemate," (R.R. at 39a), as the insurance company for the contractor informed Bolus that he could not remediate the alleged issues with the work until the claims were resolved. As a result, construction remained incomplete and Bolus's personal property and equipment were being stored in the containers on the Property. (Trial court op. at 5-6.)

Finally, the trial court reiterated Director Hinton's testimony that the storage containers were "temporary structures" normally permitted during active construction. (R.R. at 70a.) However, because the construction project had been essentially abandoned, Director Hinton stated the permit had expired and the "structures" were thus unlawful and posed a safety concern. While Bolus argued that the containers were not prohibited under the Scranton Zoning Code and that he did not consider them "structures," Director Hinton testified that, as a licensed and certified building code official, he was qualified and authorized by statute to determine whether a structure is unsafe or unsanitary under the UCC. (Trial court op. at 6.)

Ultimately, the trial court concluded that, under section 445-23 of the Scranton Zoning Code,[7] the containers qualified as "structures," defined as "any man-made object having an ascertainable stationary location on, below or in land or water, whether or not affixed to the land[.] " *Id.* Noting that the containers were 40 feet in length, stationary, and composed of metal walls, doors, a roof, and floors, the court stated, "[I]t seems plain that they can be considered structures under the [Scranton Zoning] Code." (Trial court op. at 6.) The court went on to address the UCC and IPMC, stating that Pennsylvania codified municipal adoption of both and that

---

[7] Section 445-23 of the Scranton Zoning Code was formerly section 202. (S.R. at 2-27).

10

Scranton subsequently adopted those provisions. *See* Sections 301(a)(1) and 501 of the Construction Code Act, 35 P.S. §§7210.301(a)(1) (Pursuant to this section, the Department of Labor and Industry adopted the Uniform Construction Code.), 7210.501 (requiring municipalities to adopt the UCC as their municipal building code within 90 days of the promulgation of the UCC); Scranton Property Maintenance Code, §360-1.[8] As such, the court determined that Scranton permissibly vested city officials with the authority and discretion to make determinations as to what qualifies as a structure and what constitutes an unsafe or vacant structure. *See* Scranton Property Maintenance Code, §§360-6 (permitting any public official to issue "quality-of-life" violation tickets to the owners and operators of property violating

---

[8] This section states,

> A certain document, one copy of which is on file in the office of the City Clerk of the City of Scranton, being marked and designated as "The International Property Maintenance Code, 2009 Edition," as published by the International Code Council, be and is hereby adopted as the Property Maintenance Code of the City of Scranton in the Commonwealth of Pennsylvania for regulating and governing the conditions and maintenance of all property, buildings and structures; by providing the standards for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use; and the condemnation of buildings and structures unfit for human occupancy and use, and the demolition of such existing structures as herein provided; providing for the issuance of permits and collection of fees therefor; and all of the regulations, provisions, penalties, conditions and terms of said Property Maintenance Code on file in the office of the City Clerk are hereby referred to, adopted, and made a part hereof as if fully set out in this article, with the additions, insertions, deletions and changes, if any, prescribed in § 360-2 of this article.

Scranton Property Maintenance Code §360-1, *available at* https://ecode360.com/29553182 (last visited April __, 2019).

the IPMC); 360-7 (vesting authority in the Department, or any public official, to enforce the IPMC). In reviewing these provisions, section 403.84(a) of the UCC,[9] and the photographs in the record, the court held that the containers, which were unsecured against entry, presented a safety concern. (Trial court op. at 7.)

Next, the court held that the evidence demonstrated Bolus used the containers while his property was under construction "as a means of storing certain items." *Id.* at 7. The court agreed with the Department that such containers were temporary structures ancillary to ongoing construction projects, which could not remain on a property without an active permit. Noting that Bolus's building permit had lapsed, and the Board's finding that the containers were temporary structures subject to permitting requirements and regulations, the court stated that section 445-78 of Scranton's Zoning Code made it clear the containers must be removed at no cost to the city.[10] (Trial court op. at 7.)

Finally, the court observed that it saw no reason why the containers should remain on the Property, particularly in light of Bolus's testimony that his home was capable of use and occupation which meant that he should be able to store the items "securely in the residence without the need for th[e] containers." (Trial court op. at 7.) Should Bolus choose to use the containers as storage sheds or garages, the court cautioned that he "must be prepared to comply with the applicable zoning ordinances governing [the] same." *Id.* Accordingly, the court agreed that the

---

[9] As noted *supra* p.4, this section states, in pertinent part, "A vacant building or structure that is not secured against entry is unsafe under this section." 34 Pa. Code §403.84(a).

[10] Section 445-78 of the Scranton Zoning Code, formerly section 807, states that temporary structures must have a temporary permit issued by the Board as a special exception and must "be removed completely upon expiration of the permit without cost to the City." (S.R. at 8-12).

12

containers were unsafe and unsanitary temporary structures in violation of the UCC and IPMC and upheld the violations as issued by the Department. *Id.* at 8.

Bolus filed an appeal with this Court, arguing that the trial court erred in (1) determining that the containers were "temporary structures" that were unsafe and unsanitary; (2) upholding the Notice where there was no evidence supporting Director Hinton's assertion that the containers violated section 403.84 of the UCC because they presented a danger to the public; and (3) holding that the containers were "structures" pursuant to the Zoning Code.

## Discussion

With regard to our standard of review in this case, Bolus states that, because the trial court took no additional evidence or testimony, the proper standard of review for this Court is whether the trial court erred as a matter of law or abused its discretion. Conversely, the Board asserts that the trial court accepted additional evidence at the hearing and thus it properly conducted a *de novo* review. (Board's brief at 2.) The Board asserts that it is in agreement with Bolus as to our standard of review, which is a review for an error of law or abuse of discretion. Both parties are partially incorrect.

Section 754 of the Local Agency Law, entitled "Disposition of appeal," states,

> (a) Incomplete record.—In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.

13

(b) Complete record.—In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

2 Pa.C.S. §754.

Thus, "The statute directs that if a full record was not made before the local agency, the trial court may either remand the matter to the agency for further fact-finding or hear the matter de novo." *Johnson v. Lansdale Borough*, 146 A.3d 696, 711 (Pa. 2016). However, when

the trial court hears the appeal on the complete record of the proceedings before the local agency, the trial court's standard of review is limited to determining whether there was a constitutional violation, an error of law, a failure by the local agency to comply with the statute's procedural provisions, or a material finding of fact that is unsupported by substantial evidence.

*Id.*

The decision this Court reviews depends upon whether the trial court accepted additional evidence.

Where the trial court does not take any additional evidence, our scope of review *over the decision of a local agency* is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether the procedure before the local agency was contrary to

14

> statute, and whether necessary findings of fact are supported by substantial evidence.

*Kovler v. Bureau of Administrative Adjudication*, 6 A.3d 1060, 1062 n.1 (Pa. Cmwlth. 2010) (emphasis added).  However,  where a trial court conducts a hearing *de novo*, it must weigh the evidence and make its own findings of fact and conclusions of law, and this Court, in turn, reviews *the decision of the trial court* to determine whether "constitutional rights have been violated [or] whether the [trial] court manifestly abused its discretion or committed an error of law." *McLaughlin v. Centre County Housing Authority*, 616 A.2d 1073, 1074 n.3 (Pa. Cmwlth. 1992).

Accordingly, Bolus is incorrect that this Court must review the trial court opinion for an error of law or abuse of discretion if, as he asserts, the trial court *did not* take additional evidence.  In the event the trial court did not take additional evidence or conduct a *de novo* review, this Court must review *the Board's* findings for substantial evidence.  Conversely, the Board is correct that this Court should review the trial court's opinion for an error of law or abuse of discretion if the trial court took additional evidence and reviewed the matter *de novo*.  It is unclear, however, whether the trial court did, in fact, take additional evidence during the hearing and, consequently, we must remand for clarification by the trial court.

During the hearing, the trial court specifically asked Bolus's counsel, "Am I reviewing this record [of the Board] for an abuse of discretion or an error of law? Do you agree with that?"  (R.R. at 97a.)  Bolus's counsel agreed.  Further, the court stopped counsel for the Board from attempting to introduce testimony from Director Hinton because, it reiterated, the court was not taking additional evidence. (R.R. at 98a-99a.)  As Bolus notes in his brief, "[T]he trial court heard legal argument.  Neither party called any witnesses."  (Bolus's brief at 6.)

15

Nonetheless, in its opinion, the trial court stated that it conducted a *de novo* review of the Board's decision and reviewed the case on the merits. (Trial court op. at 3-4.) The court explained that the hearing before it was scheduled as a result of routine practice and that it was not done because the record was in any way incomplete. *Id.* However, citing section 1005-A of the Pennsylvania Municipalities Planning Code (MPC),[11] the court stated that, because it characterized the hearing as taking additional evidence (albeit evidence that "add[ed] nothing new to the case"), it felt that a decision on the merits was required. (Trial court op. at 4.) However, if, as the record appears to indicate, the trial court only heard legal argument, the trial court

---

[11] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202. Section 1005-A was added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11005-A. In full, this section states,

> If, upon motion, it is shown that proper consideration **of the land use appeal** requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence, provided that appeals brought before the court pursuant to section 916.11 shall not be remanded for further hearings before any body, agency or officer of the municipality. If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. If the record does not include findings of fact or if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any.

53 P.S. §11005-A (emphasis added). It does not appear, however, that the MPC applies here, since the matter under consideration was not a land use appeal, *see id.*, and the decision under review was not issued by "any board or other body granted jurisdiction under any land use ordinance." Section 107 of the MPC, 53 P.S. §10107.

16

erred in its conclusion that it was required to conduct a *de novo* review, as pure legal argument cannot be construed as the taking of additional evidence.

Perplexingly, the trial court stated, "At the hearing [before the trial court] in this matter on September 19, 2017, **testimony was presented** by both Mr. Bolus and representatives from the Board and the City of Scranton." (Trial court op. at 3) (emphasis added). Upon our own review of the record, however, we note Mr. Bolus *did not testify before the trial court* at the September 19, 2017 hearing, nor did any other party. *See* R.R. at 90a-112a. In fact, the only individuals who spoke on the record at the hearing were Bolus's attorney, the City's attorney, and the trial court judge. Thus, it is unclear what "testimony" from the hearing the court was referencing. If Bolus or representatives for the Board or Scranton did testify before the trial court, their testimony does not appear in the record. If those individuals did not testify before the trial court, and the court was instead referencing testimony before the Board, it is not clear why the court used the term "testimony. . . before this [c]ourt." (Trial court op. at 5.) Accordingly, we remand the matter to the trial court for the issuance of a new opinion and order specifying the evidence it relied upon, clarifying whether it accepted additional evidence, and, based upon that information, setting forth the appropriate standard of review.[12]

---

[12] As noted *supra* note 2, FOC #155, 1999 does not appear in the record. In response to an order from this Court directing Bolus to file the entire applicable zoning or other relevant ordinance or code with this Court, Bolus filed a copy of City of Scranton's Zoning Code, entitled "File of Council #74, 1993," instead of FOC #155, 1999. On remand, we direct the City Solicitor of Scranton to submit a complete copy of FOC #155 of 1999, as well as its present version, into the record.

Accordingly, we must vacate the trial court's order and remand this matter for the issuance of a new opinion and order consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Robert Bolus, | : | |
| Appellant | : | |
| | : | No. 202 C.D. 2018 |
| v. | : | |
| | : | |
| City of Scranton Department of | : | |
| Licensing, Inspections and Permits; | : | |
| and City of Scranton Housing | : | |
| Appeals Review Board | : | |

## ***ORDER***

AND NOW, this 2nd day of May, 2019, the opinion and order of the Court of Common Pleas of Lackawanna County, dated January 11, 2018, is hereby vacated and the matter is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge